**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CAITRIN M.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-4275** |
| **FRANK J. BISIGNANO, Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On December 29, 2025, Plaintiff Caitrin M. petitioned this Court to review the final decision of the Social Security Administration (SSA or the Commissioner) denying her claim for benefits.[1] ECF No. 1. Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 13, 15–16. No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. § 405(g); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

## I. BACKGROUND

The instant action is Plaintiff's second appeal in connection with her claim for benefits. Following an overview of the procedural history of this case and the applicable statutory framework is a discussion of the administrative decision at issue in this appeal.

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent and reassigned to the undersigned on September 9, 2026. ECF Nos. 3, 5–6; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

**A. Procedural History**

On January 31, 2020, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq*., alleging a disability onset date of July 10, 2019. ECF No. 9-1 at 72–73, 87, 89.[2] After the SSA denied Plaintiff's application for benefits, she sought reconsideration and the Commissioner affirmed its determination on May 19, 2021. *Id.* at 85, 87, 89–90, 98, 113. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on November 1, 2021. *Id.* at 37–69, 119; ECF No. 9-2 at 90–122. On November 10, 2021, the ALJ rendered a decision (ALJ Decision I) in which she found that Plaintiff was not disabled within the meaning of the Act. ECF No. 9-1 at 21–31, 1050–1060. Plaintiff requested further review, which the Appeals Council denied on September 1, 2022. *Id.* at 7, 13, 1065. On October 28, 2022, Plaintiff filed suit in this Court seeking review of ALJ Decision I. *Id.* at 1078. On August 17, 2023, this Court remanded the case to the Commissioner for further proceedings. *Id.* at 1077–1083; *Caitrin M.* v. *Kijakazi*, Civil Action No. BAH-22-2785, 2023 WL 5300318 (D. Md. Aug. 17, 2023). On October 30, 2023, the Appeals Council vacated ALJ Decision I and remanded Plaintiff's case to a different ALJ. *Id*. at 1073, 1086. The second ALJ held a hearing and rendered a decision on May 22, 2024, in which he found that Plaintiff was not disabled within the meaning of the Act (ALJ Decision II). *Id.* at 1007–1046, 1092–1105. Plaintiff requested further review and the Appeals Council remanded the case to the same ALJ with instructions. *Id.* at 1112–1115. The ALJ held another hearing and rendered a decision on October 29, 2025, in which he again denied Plaintiff's claim for benefits (ALJ Decision III). *Id.* at 954–971, 980–1006. Plaintiff subsequently filed the instant appeal seeking review of ALJ Decision III. ECF No. 1.

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

**B. Statutory Framework**

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."[3] *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. § 404.1520. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "At step five, the burden shifts to the Commissioner to prove, by a preponderance of evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted). If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at the

[3] The Disability Insurance Benefits program provides benefits to individuals "who have contributed to the program while employed." *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017); *see also* 42 U.S.C. § 423(a).

third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 180.

**C. ALJ Decision III**

As a threshold matter, the ALJ determined that Plaintiff met the insured status requirements of the Act. ECF No. 9-1 at 956. At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff did not engage in substantial gainful activity between July 10, 2019, through July 15, 2022.[4] *Id.* at 957. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease; status-post discectomy with C3-C4 and C6-C7 disc replacements; sacroiliitis; and anxiety, major depressive, and attention-deficit/hyperactivity disorders. *Id.* At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[5] *Id.* at 959 (bold removed). Before continuing to the step four of the sequential evaluation, the ALJ determined

[4] On April 2, 2024, Plaintiff amended her claim to "a closed period of disability from July 10, 2019, through July 15, 2022," the date on which Plaintiff began "working at substantial gainful activity levels." ECF No. 9-1 at 954. The Administrative Law Judge's (ALJ) conclusions at each sequential step are confined to this amended timeframe.

[5] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (quoting 20 C.FR. Part 404 Subpart P, Appendix 1, §§12.00(A), 112.00(A)).

that Plaintiff "had the residual functional capacity to perform light work," except that, as relevant here, she could only "perform simple, routine, repetitive, low-stress (no strict production quotas, no assembly line pace work) work involving occasional interaction with supervisors, co-workers, and the general public; and could tolerate occasional changes in a routine work setting."[6] *Id.* at 961 (bold removed). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id*. at 969. At step five, the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id*. at 970 (bold removed). Ultimately, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Act and that her claim for benefits was properly denied. *Id.* at 971.

## II. DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ posed an inadequate hypothetical question to the vocational expert. ECF No. 13 at 8–12. The Commissioner argues the opposite. ECF No. 15 at 7–11. Following discussion of the applicable standard of review, the parties' arguments are addressed below.

### A. Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx 256,.t 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id*. Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the

[6] While not relevant to the issues raised in this appeal, the ALJ included several other exertional and non-exertional limitations in his residual functional capacity determination. ECF No. 9-1 at 961.

weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (quoting *Consolidated Edison Co. of N.Y.* v. *NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). "Meaningful review is frustrated—and remand necessary—only where [the Court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B. Vocational Expert Hypothetical Question**

Plaintiff argues that the ALJ's hypothetical question was inadequate because it did not define "no strict production quotas and no assembly line pace work." ECF No. 13 at 9. Plaintiff contends that the "unexplained terms leave material uncertainty as to the intended scope of the limitation and the specific types of work actually precluded." *Id.* The Commissioner counters that the ALJ's hypothetical question and decision, read as a whole, contain sufficient descriptors and context to explain the meaning of the challenged phrase and permit meaningful judicial review. ECF No. 15 at 8–11. The undersigned concurs.

ALJs are afforded "great latitude in posing hypothetical questions . . . so long as there is substantial evidence to support the ultimate question." *Koonce* v. *Apfel*, No. 98-1144, 1999 WL 7864, at *5, 166 F.3d 1209 (Table) (4th Cir. Jan. 11, 1999). Hypothetical questions need only be "based on substantial evidence and accurately reflect a plaintiff's limitations." *Sarah H.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3358, 2021 WL 4426875, at *1 n.1 (D. Md. Sept. 27, 2001); *see also Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record.").

Here, the ALJ asked the vocational expert to "assume an individual of the claimant's age, education, and work experience who is limited to light work as the term is defined in the Social Security Administration's regulations." ECF No. 9-1 at 998. The ALJ then proceeded to summarize in the hypothetical question a series of exertional capacity and non-exertional capacity limitations.[7] *Id.* at 998-999. The ALJ continued on to include the following additional nonexertional limitations in the hypothetical question:

> Further, the individual can only perform simple, routine, and repetitive tasks in a low stress work environment with low stress defined as no strict production quotas and no assembly line pace work. The individual also could only occasionally interact with the public, coworkers and supervisors. And finally, the individual can tolerate only occasional changes in a routine work setting.

*Id.* The vocational expert testified that an individual with the identified limitations could not perform Plaintiff's past work and that there were no jobs in the national economy that such an

---

[7] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.* at 6.

individual could perform. *Id.* at 999. In response to another hypothetical question with modified exertional capacity limitations and used the same non-exertional capacity limitations set forth above, the vocational expert testified that there were jobs the national economy that the hypothetical individual could perform. *Id.* at 1000–1001.

Plaintiff correctly observes that the phrase "no strict production quotas and no assembly line pace work" is not defined in the applicable federal regulations or the *Dictionary of Occupational Titles*, an SSA resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015); ECF No. 13 at 9. But, here, the ALJ did not impose a specific pace-related limitation. Rather, he used the challenged phrase to elaborate on the meaning of "low stress work environment," which was a facet of the non-exertional restrictions set out in the hypothetical question. ECF No. 9-1 at 998–999. The non-exertional capacity limitations outline the type of work ("simple, routine, and repetitive tasks"), work environment ("in a low stress work environment with loss stress defined as no strict production quotas and no assembly line pace work"), interaction with others ("only occasionally interact with the public, coworkers, and supervisors"), and modification of the work routine ("the individual can tolerate only occasional changes in a routine work setting"). *Id.* Taken together, these limitations both identify the nature of the work for the vocational expert and provide sufficient detail for meaningful judicial review. Even if considered to be a pace-related limitation, the challenged phrase consists of examples that the undersigned previously found to provide adequate meaning of the term "specific production rate." *Autumn C.* v. *Bisignano*, Civil Action No. EA-25-1592, 2026 WL 1072758, at *5-6 (D. Md. Apr. 20, 2026), *reconsideration denied*, 2026 WL 2042105 (D. Md. July 15, 2026); *accord Shuronn S.* v. *Kijakazi*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Delonte C.* v. *Kijakazi*, Civil

Action No. TMD 20-2436, 2021 WL 4391089, at *5 (D. Md. Sept. 24, 2021); *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021). What is more, the additional context—supplied by the other non-exertional capacity limitations—clarify a production-rate limitation that is otherwise undefined. *Perry* v. *Berryhill*, 765 Fed. Appx. 869, 872 n.1 (4th Cir. 2019) (discussing *Sizemore* v. *Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017)). The undersigned concludes that the ALJ's hypothetical question in the case at bar "contains terms that are subject to common understanding." *Kenneth L.*, 2021 WL 4198408, at *2 (finding that judicial review was not frustrated because the term "no strict production quotas" "plainly relates to the rigidity of the occupations' production requirements").[8]

[8] The undersigned recognizes that case law on the issue of production-rate-related non-exertional capacity limitation is mixed. Some decisions of this Court have held that the phrase "'no strict production quotas' contains terms that are subject to common understanding." *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021); *accord Brandy K.* v. *Kijakazi*, Civil Action No. CBD-20-3749, 2022 WL 798690, at *6 (D. Md. Mar. 16, 2022); *Shuronn S.* v. *Kijakazi*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Maryann H.* v. *Kijakazi*, Civil Action No. TMD-20-2520, 2021 WL 5239852, at *5 (D. Md. Nov. 10, 2021). Other decisions of this Court have concluded that "a limitation on production rate or pace combined with a prohibition on quotas"—or an explanation, additional descriptor, or example—"provides enough detail for judicial review." *Melissa J.* v. *Kijakazi*, Civil Action No. BAH-22-1003, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases) (internal quotations omitted); *Briana H.* v. *O'Malley*, Civil Action No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (explanation); *Dawn B.* v. *Kijakazi*, Civil Action No. BPG-21-69, 2022 WL 1714918, at *3 (D. Md. Jan. 11, 2022) (additional descriptor); *Jackie W.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (example). Still others have concluded that phrases like "specific production rate pace," even when coupled with examples ("such as assembly line work or piecemeal quotas"), are too ambiguous to permit judicial review. *Alkein C.* v. *Bisignano*, Civil Action No. TJS-25-1310, 2026 WL 1266164, at *2 (D. Md. May 8, 2026); *Al-Nissa J.* v. *Bisignano*, Civil Action No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026). As the undersigned observed previously, "[u]nless and until the United States Court of Appeals for the Fourth Circuit squarely addresses the issue of the phrasing of production rate or pace hypothetical questions and corresponding residual functional capacity determinations, district courts must apply the existing case law . . . and their own reason and judgment to each case." *Jennifer G.* v. *Bisignano*, Civil Action No. EA-25-2678, 2026 WL 2797077, at *1 (D. Md. Sept. 18, 2026).

Plaintiff's reliance on *Linger* v. *Commissioner of Social Security*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), an unpublished and thus non-binding decision, does not compel a different result. ECF No. 13 at 9. *Linger* reversed and remanded the case due to myriad errors that permeated the ALJ's analysis and rendered the decision as a whole unsupported by substantial evidence. 2025 WL 40548, at *5. As to the residual functional capacity determination, the ALJ did not address the plaintiff's ability to perform tasks for the full workday, did not explain how the identified limitations addressed the plaintiff's mental limitations in two functional areas, and did not define "no fast[-]paced production requirements." *Id.* (quotation marks omitted). The *Linger* panel also found that there was insufficient evidence to support the SSA's factual determinations and the ALJ gave too little weight to medical opinions, failed to reconcile conflicting evidence, or explain how the plaintiff's ability to carry out daily activities translated into the ability to work a full day. *Id.* at *6. Although the *Linger* panel concluded that the phrase "no fast[-]paced production requirements such as assembly line work or piecemeal quotas" engendered "uncertainty as to the intended scope of the limitation," another panel recently noted, in a published decision, that a moderate limitation in concentrating, persisting, or maintaining pace was appropriately accommodated by "a limitation to unskilled, routine, repetitive tasks at a *non-production pace* and the ability to sustain concentration in two-hour intervals." *Calhoun* v. *Commissioner of Soc. Sec.*, No. 24-1315, --- F.4th---, 2026 WL 2602326, at *5 n.7 (4th Cir. Sept. 3, 2026) (emphasis added).

## III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date: September 25, 2026

/s/
Erin Aslan
United States Magistrate Judge